## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| X CORP.<br><br>    Movant,<br><br>v.<br><br>ERNST & YOUNG, LLP,<br><br>    Respondent. | Case No. 1:23-mc-00082-ABJ<br><br>Underlying Case, *United States v. Twitter*, pending in the United States District Court for the Northern District of California:<br><br>No. 22 Civ. 3070 |

## X CORP.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY .........................................................................................................2

ARGUMENT .................................................................................................................................4

I. X CORP. IS ENTITLED TO POST-JUDGMENT DISCOVERY FROM EY. ...................4

II. THERE IS NO SERIOUS ARGUMENT THAT THE DOCUMENTS X CORP. IS SEEKING ARE NOT RELEVANT. ...................................................................................9

III. EY'S BURDEN ARGUMENTS ARE DISINGENUOUS. ................................................11

IV. EY'S REQUEST FOR ATTORNEY'S FEES IS MERITLESS. ........................................13

CONCLUSION............................................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Page**

## Cases

*Brinton v. Dep't of State*,
   636 F.2d 600 (D.C. Cir. 1980) ................................................................................................ 11

*Bumpers for Est. of Bumpers v. Austal U.S.A, L.L.C*,
   No. CV 08-0155-KD-N, 2016 WL 10705925 (S.D. Ala. Oct. 31, 2016) .................................. 5

*\*Caliste v. Cantrell*,
   CV 17-6197, 2020 WL 814860 (E.D. La. Feb. 19, 2020) .................................................... 4, 5

*California Dep't Soc. Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008) .................................................................................................. 5

*Dawson v. N.Y. Life Ins. Co.*,
   901 F. Supp. 1362 (N.D. Ill. 1995) ......................................................................................... 11

*In re Diisocyanates Antitrust Litig.*,
   Misc. No. 18-1001, 2019 WL 1069660 (W.D. Pa. Jan. 15, 2019) ......................................... 12

*In re HealthSouth Corp. Sec. Litig.*,
   250 F.R.D. 8 (D.D.C. 2008) ................................................................................................... 11

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
   124 F.3d 1304 (D.C. Cir. 1997) ............................................................................................. 11

*Dobyns v. United States*
   127 Fed. Cl. 63 (2016), *aff'd*, 915 F.3d 733 (Fed. Cir. 2019) .................................................. 7

*U.S. ex rel. Free v. Peters*,
   826 F. Supp. 1153 (N.D. Ill. 1993) .......................................................................................... 8

*Fujikura Ltd. v. Finisar Corp.*,
   15-MC-80110-HRL (JSC), 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) .............................. 13

*Goldy v. Beal*,
   91 F.R.D. 451 (M.D. Pa. 1981) ................................................................................................ 7

*H. K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*,
   536 F.2d 1115 (6th Cir. 1976) .................................................................................................. 8

*Maximized Living, Inc. v. Google, Inc.*,
   No. C11-80061-MISC CRB (EDL), 2012 WL 1439034 (N.D. Cal. Mar. 30,
   2012), *report and recommendation adopted,* No. C 11-80061 CRB, 2012 WL
   1438988 (N.D. Cal. Apr. 25, 2012) ........................................................................................ 13

*Med. Components, Inc. v. Classic Med., Inc.*,
   210 F.R.D. 175 (M.D.N.C. 2002) .................................................................................. 14

*Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*,
   177 F.R.D. 438 (N.D. Iowa 1997) .................................................................................. 7

*Moore v. USC Univ. Hosp., Inc.*,
   No. CV 07-7850 PA (EX), 2019 WL 1751817 (C.D. Cal. Feb. 12, 2019),
   *aff'd*, 803 F. App'x 131 (9th Cir. 2020) ........................................................................ 8

*Mwani v. Al Qaeda*,
   2021 WL 5800737 (D.D.C. Dec. 7, 2021) ...................................................................... 5

*Oehmke v. Medtronic, Inc.*,
   CIV. No. 13-2415 MJD/JSM, 2015 WL 2242041 (D. Minn. Mar. 26, 2015),
   *aff'd*, CIV. No. 13-2415 MJD/JSM, 2015 WL 22422064 (D. Minn. May 12,
   2015) .............................................................................................................................. 11

*In re Pioneer Hi-Bred Intern., Inc.*,
   238 F.3d 1370 (Fed. Cir. 2001) ...................................................................................... 11

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014) ........................................................................................................ 4

*Rutherford v. Baca*,
   CV 75-04111 DDP, 2009 WL 10653011 (C.D. Cal. Aug. 4, 2009), *clarified
   on denial of reconsideration*, CV 75-04111 DDP, 2009 WL 10653010 (C.D.
   Cal. Sept. 22, 2009) ..................................................................................................... 4, 5

*S.E.C. v. Thrasher*,
   No. 92 CIV. 6987 (JFK), 1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) ........................... 11

*S.E.C. v. Wheeling-Pittsburgh Steel Corp.*,
   648 F.2d 118 (3d Cir. 1981) ............................................................................................ 5

*Sathianathan v. Smith Barney, Inc.*,
   No. C-04-02130 SBA (JCS), 2007 WL 2417370 (N.D. Cal. Aug. 24, 2007) .................. 8

*\*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
   301 F.R.D. 20 (D.D.C. 2014) ............................................................................. 5, 8, 12, 13

*Valerio v. Boise Cascade Corp.*,
   80 F.R.D. 626 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981) ............................. 8

## Other Authorities

Fed. R. Civ. P. 45(a)(3) ............................................................................................................ 5

Fed. R. Civ. P. 45(d)(2)(B)(i) .................................................................................................. 3

X Corp., successor in interest to Defendant Twitter, Inc. respectfully submits this memorandum of law in support of its motion to compel compliance with the subpoena *duces tecum* issued to Ernst & Young, LLP ("EY").

## PRELIMINARY STATEMENT

X Corp. is entitled to discovery from EY, which the FTC attempted to intimidate into issuing a report the FTC could use to justify penalizing X Corp. That misconduct is a key issue in X Corp.'s motion pending before the Honorable Thomas S. Hixson, United States Magistrate Judge for the Northern District of California, to terminate the company's Consent Order with the agency. Denying X Corp. the ability to examine the scope and impact of the FTC's misconduct would be unfair, it would be contrary to precedent, and it would deprive Judge Hixson of likely critical evidence bearing on X Corp.'s motion to terminate the Consent Order.

Notably, it was the FTC, in seeking to enforce the Consent Order, over which the Northern District of California exercises continuing jurisdiction, that sought post-judgment discovery from EY concerning the termination of the company's role as X Corp.'s independent assessor. EY complied with that request and, among other things, produced engagement partner David Roque for a deposition. Only after Mr. Roque made the startling disclosure that the FTC had attempted to dictate the course of EY's assessment—which by the terms of the Consent Order was required to be independent—did X Corp. seek post-judgment discovery of its own, to further understand the nature and extent of the improper pressure that the FTC had exerted on EY. That discovery, like the FTC's own post-judgment discovery, is directly pertinent to enforcement of the Consent Order, which is a live issue before Judge Hixson—including in X Corp.'s pending motion to terminate the Consent Order. Just as the FTC's post-judgment discovery was permissible, so too was X Corp.'s. It would have been irresponsible for a party in X Corp.'s position not to pursue discovery into the revelation that a government agency had engaged in conduct that directly

violates the Order, not to mention core principles of due process.

Caught in the middle of this dispute, EY predictably seeks to avoid it. But EY's opposition to X Corp.'s discovery motion conspicuously does not dispute the core bases for X Corp.'s request: EY does not dispute Mr. Roque's revelations, it does not defend the FTC's conduct, and it does not suggest (nor could it) that the discovery X Corp. seeks is not directly relevant to X Corp.'s pending motion. EY instead throws up supposed technical defects in X Corp.'s request, but none of those has merit. Post-judgment discovery is routinely conducted and should be compelled here in light of Mr. Roque's troubling testimony regarding the FTC's misconduct. Nothing in the Consent Order, the Federal Rules of Civil Procedure, or any other authority required X Corp. to seek leave of court before serving the subpoena. The documents X Corp. seeks from EY pertain directly to X Corp.'s pending motion for relief from the Consent Order, and any overbreadth, burden, or privilege concerns are alleviated by X Corp.'s offer to accept a duplicate of the documents EY already produced to the FTC.

X Corp.'s subpoena seeks evidence that is relevant to the indisputably important issue of how and to what extent a government agency tasked with protecting consumer interests became so biased and unfair that it sought to weaponize an independent auditor and intimidate it into generating evidence damaging to the target of its investigation. X Corp. bent over backward to reduce the burden and inconvenience to EY. Although it is understandable that EY would be reluctant to get dragged further into the very dispute into which the FTC improperly sought to drag it in the first place, any fair resolution of X Corp.'s motion to terminate the Consent Order requires discovery from EY. The Court should order EY to comply with the subpoena.

## PROCEDURAL HISTORY

On August 3, 2023, X Corp. served a subpoena *duces tecum* on EY seeking documents regarding its work as the independent assessor appointed pursuant to the Consent Order. *See*

Motion 10–11, *X Corp. v. Ernst & Young, LLP* ("*X Corp. v. EY*"), No. 23 Misc. 82 (ABJ) (D.D.C.), Dkt. 1 ("Mot."). The issuance of the subpoena followed a lengthy dialogue with EY's counsel and multiple offers to narrow the scope of what X Corp. was seeking. *See id.* Because EY would agree to produce only a handful of documents, X Corp. issued the subpoena. *Id*. When EY continued to refuse to produce documents responsive to the subpoena, X Corp. moved to compel production. *Id.* Because the subpoena had requested production at X Corp.'s counsel's office in Washington, D.C., Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure required X Corp. to file the motion in the United States District Court for the District of Columbia, as that was "the court for the district where compliance [wa]s required."

EY filed an opposition on September 8, 2023. *See* Opposition, *X Corp. v. EY*, Dkt. 14 ("Opp."). EY argued, among other things, that X Corp.'s motion was an improper attempt "to circumvent the California Court's jurisdiction by sneaking in the back door and requesting that [the District of Columbia] Court compel production." *Id.* at 11. Yet EY not only failed to acknowledge that Rule 45(d)(2)(B)(i) *required* X Corp. to file its motion in the District of Columbia, but it made no request to transfer the motion to the Northern District of California as Rule 45(f) contemplates. It was only when the district court itself sought the parties' position regarding transfer, and X Corp. promptly indicated that it agreed such transfer was appropriate, that EY provided its consent.

On September 13, 2023, the District Court for the District of Columbia ordered that this motion to compel be transferred to the Northern District of California. Minute Entry, *X Corp. v. EY*, Dkt. 19. The order instructed the Clerk of Court to process the transfer by September 23, 2023. *Id.* Given the pending transfer, X Corp. is filing this reply memorandum in the District of Columbia Court pending the transfer of the rest of the docket to the Northern District of California.

**ARGUMENT**

I.   **X CORP. IS ENTITLED TO POST-JUDGMENT DISCOVERY FROM EY.**

EY's argument that X Corp. is not permitted to take discovery is off-base. EY argues principally that Rule 45 only authorizes discovery regarding "claims" and "defenses," which it says no longer exist where, as here, a party seeks relief from a judgment that already has been entered. *See* Opp. 8–9, 12–14. But if that were true, post-judgment discovery would never be available, and numerous courts have recognized that such discovery is appropriate where, as here, a party seeks relief from, or to evaluate compliance with, a consent order that has been reduced to judgment. *See, e.g.*, *Caliste v. Cantrell*, CV 17-6197, 2020 WL 814860, at *4 (E.D. La. Feb. 19, 2020) (post-judgment discovery appropriate to ensure consent order was followed despite case being "closed" on the docket); *Rutherford v. Baca*, CV 75-04111 DDP, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009), *clarified on denial of reconsideration*, CV 75-04111 DDP, 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009).[1] This is consistent with the Supreme Court's recognition that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014).

Even based on the limited information available to it pre-discovery, X Corp. has made a compelling showing that the FTC engaged in conduct so unusual and belligerent that a senior partner of EY—a company that holds a central position in the world economy and has more than 300,000 employees—felt that the FTC might retaliate against and "create[] 'other' challenges for EY" if he did not toe the FTC's line and produce a report showing "there were deficiencies in Twitter's privacy and information security program." *X Corp. v. EY*, Dkt. 1-13 (Ex. 11) at 1; Dkt. 1-9 (Ex. 7) at 200:21–201:3. EY does not dispute this alarming evidence of FTC overreach and

---

[1] Unless otherwise indicated, this brief omits internal quotation marks, citations, alterations, and omissions from legal citations.

4

inequitable conduct, nor does it dispute that inequitable conduct by the FTC is a basis to terminate the Consent Order. X Corp. thus is entitled to discovery of the scope and impact of the FTC's bullying of an independent third-party assessor. *See Caliste*, 2020 WL 814860, at *4; *Rutherford*, 2009 WL 10653011, at *2; *California Dep't Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (reversing district court's refusal to allow limited discovery to aid court in determining whether counterparty had complied with judgment in her favor); *see also S.E.C. v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 129 (3d Cir. 1981) (remanding claim of agency abuse of process with instructions that "respondents should be entitled to discovery procedures" in further proceedings).

Nor did X Corp. commit a foot-fault by failing to seek leave of court prior to issuing the subpoena to EY. *See* Opp. 9–12. "[T]here is no requirement that [a party] request permission of the Court to conduct [post-judgment] discovery." *Bumpers for Est. of Bumpers v. Austal U.S.A, L.L.C*, No. CV 08-0155-KD-N, 2016 WL 10705925, at *1, n.1 (S.D. Ala. Oct. 31, 2016); *see also Mwani v. Al Qaeda*, 2021 WL 5800737 at *12 (D.D.C. Dec. 7, 2021) ("Rule 69(a)(2) does not require permission from the district court to engage in post-judgment discovery. The motion is therefore technically unnecessary."). Likewise for a Rule 45 subpoena. Fed. R. Civ. P. 45(a)(3) ("An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court."). Nor did the Consent Order require X Corp. to seek leave of court. That the Consent Order explicitly authorizes certain discovery actions by the FTC neither says nor implies anything about X Corp.'s ability to take discovery in connection with a motion to terminate the Consent Order. *See United States v. Twitter, Inc.*, No. 22-3070, (TSH) (N.D. Cal.), Dkt. No. 11, Section XIII. In a similar case, a party to a pending ERISA lawsuit in the Eastern District of Michigan served a subpoena on a nonparty, the Treasury Department, in the District of Columbia

without notifying or seeking leave from the court where the underlying dispute was proceeding. *See U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 23–24 (D.D.C. 2014); *Black v. P.B.G.C.*, Case No. 09-13616 (E.D. Mich.), Dkt. 197–204. The court denied the Treasury Department's motion to quash because the requested documents were relevant, not unduly burdensome in light plaintiffs' offers to narrow the scope, and not unreasonably duplicative even though there was "some overlap" with documents already produced in the pending lawsuit. *Id.* at 27–30. X Corp. was under no obligation to seek leave from the Northern District of California before serving a Rule 45 subpoena on EY nor moving to compel compliance with that subpoena in the District of Columbia.

EY's argument that X Corp. somehow conceded that it was required to seek leave to take discovery is unsupported. Opp. 11. Prior to moving to terminate the Consent Order, X Corp. sought discovery from the FTC, and the FTC refused to comply with those demands. *X Corp. v. EY*, Dkt. 1-15 (Ex. 13). X Corp. nevertheless moved to terminate the Consent Order because the existing record of FTC misconduct justifies termination. *See United States v. Twitter*, Dkt. 17. X Corp. also requested, in the alternative, that the Northern District of California court compel the FTC to comply with the existing document demands that X Corp. had propounded on the FTC. *Id.* at 20. X Corp.'s request to compel the FTC's compliance with existing discovery demands is a functional equivalent of its request to compel EY's compliance here. In any event, the fact that X Corp. is seeking to take third-party discovery is no secret: X Corp. publicly filed on the docket in the Northern District of California notice of another third-party subpoena before it issued the subpoena to EY, with no indication from Judge Hixson (nor the FTC) that this was unauthorized or otherwise improper. *See United States v. Twitter*, Dkt. 35.

In any event, to the extent they suggest that judicial authorization to take discovery is

6

required, the decisions cited in EY's Opposition demonstrate that X Corp. is entitled to the discovery it seeks here. For instance, in *Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*, the court granted a post-judgment deposition because the plaintiff made a *prima facie* showing of success on its Rule 60 motion. 177 F.R.D. 438, 442 (N.D. Iowa 1997). Likewise here, David Roque's testimony and internal EY communications illustrate the FTC's heavy-handed attempt to generate evidence that would be damaging to X Corp., including by "pressuring [EY] to reach a specific outcome" and causing Mr. Roque to fear that if EY resigned as X Corp.'s independent assessor, "[t]he FTC [will] take[] exception to our withdrawal and create[] 'other' challenges for EY over time." *X Corp. v. EY*, Dkt. 1-11 (Ex. 9); Dkt. 1-13 (Ex. 11). Such conduct provides ample basis to grant X Corp.'s motion to terminate the Consent Order—far beyond a mere *prima facie* showing. *See United States v. Twitter*, Dkt. 17. Similarly, in *Dobyns v. United States*—which does not apply a *prima facie* standard but instead leaves post-judgment discovery to the district court's "sound discretion"—the court granted post-judgment discovery permitting plaintiff to "secure[] every [existing,] contemporaneous document . . . [pertaining] to [their claims of fraud upon the court]" in a case regarding the government's breach of a settlement agreement. *See* 127 Fed. Cl. 63, 67, 72 (2016), *aff'd*, 915 F.3d 733 (Fed. Cir. 2019).

    EY's remaining citations are inapposite because they denied post-judgment discovery to movants who failed to make a *prima facie* showing of entitlement to relief from judgment or, sometimes, no showing at all. In *Goldy v. Beal*, the court denied post-judgment discovery because plaintiffs "*concede[d] that they have no concrete facts* behind their suspicion that the [stipulation] needs an overhaul." 91 F.R.D. 451, 455 (M.D. Pa. 1981) (emphasis added). Such a decision has no relevance where X Corp. has compiled a record of FTC misconduct that justifies relief from the Consent Order. EY's other citations are distinguishable for the same reason. *See Moore v.*

*USC Univ. Hosp., Inc.*, No. CV 07-7850 PA (EX), 2019 WL 1751817, at *1–3 (C.D. Cal. Feb. 12, 2019) (denying post-judgment discovery of irrelevant documents in a case that had been closed for nearly a decade), *aff'd*, 803 F. App'x 131 (9th Cir. 2020); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 647 (N.D. Cal. 1978) (denying post-judgment discovery to undo a class action settlement because there was no evidence of fraud on the court), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *U.S. ex rel. Free v. Peters*, 826 F. Supp. 1153, 1155 (N.D. Ill. 1993) (denying post-judgment discovery where "respondents' proffer in support of [misconduct allegations] falls short of a prima facie showing of fraud"); *H. K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (denying post-judgment discovery because movant "had shown no proof of fraud"). In particular, *H. K. Porter Co.*, on which EY repeatedly relies, dealt with the materially different circumstances where the movant sought post-judgment discovery of documents it could have obtained pretrial but failed to demand. *Id.* at 1117–18. Here, however, the documents X Corp. seeks did not exist until months after judgment was entered.

Finally, EY's suggestion that X Corp. had to wait for Judge Hixson to rule on its pending motion to terminate the Consent Order makes little sense. Opp. 5, 11. Post-judgment discovery in support of a motion for relief from judgment would be of little value if it were authorized only *after* decision on the motion. *See, e.g.*, *Sathianathan v. Smith Barney, Inc*., No. C-04-02130 SBA (JCS), 2007 WL 2417370, at *3 (N.D. Cal. Aug. 24, 2007) ("[B]efore a ruling on a Rule 60 Motion [discovery] is appropriate so long as a party acts in good faith and makes out a reasonable case that discovery might lead to relevant information."). Nor was X Corp. required to await the outcome of its motion to compel discovery from the FTC before seeking related discovery from third parties. *See, e.g.*, *Pension Benefit Guar. Corp.*, 301 F.R.D. at 28, 30 (discovery from Treasury Department regarding whether defendants "improperly yielded to pressure from . . . [the]

Treasury" was appropriate notwithstanding that defendants' objection to discovery of "very similar" evidence was still pending in another district because, "[a]lthough the documents requested may have some overlap," their production would not be unreasonably cumulative or duplicative).

X Corp.'s motion is premised on FTC conduct that is tantamount to witness tampering. The notion that X Corp. should not be permitted to seek discovery from the witness in question simply is not tenable. X Corp. properly availed itself of the discovery mechanisms available to it in order to develop the record regarding this alarming conduct. EY's procedural arguments are unfounded.

## II. THERE IS NO SERIOUS ARGUMENT THAT THE DOCUMENTS X CORP. IS SEEKING ARE NOT RELEVANT.

For the same reason, X Corp.'s requests easily satisfy the relevance threshold. Based only on Mr. Roque's testimony and the few documents the FTC unilaterally selected to introduce at his deposition, X Corp.'s motion brought to light government misconduct of the most insidious sort: strong-arming a credible firm like EY, which ostensibly was acting as an independent assessor, into issuing a report that the FTC could use as a basis to penalize X Corp. Such conduct corrupts the investigation process, deprives X Corp. of its right to due process, and undermines confidence in the government. Even the limited record available at present demonstrates that the FTC's investigation has spiraled out of control and become so infected with bias that it cannot serve lawful purposes.

Against this backdrop, the notion that discovery from EY—the object of the FTC's pressure campaign—would not be relevant, is laughable. The gravamen of EY's claim once again is that the discovery X Corp. requests cannot be "relevant" because there is no "claim" or "defense" pending. Opp. 12–14. But as noted above, this construction of relevance proves too much: if

9

accepted, it would mean that post-judgment discovery could never seek "relevant" evidence.  And in any event, it flies in the face of extensive precedent authorizing post-judgment discovery.  *See supra* 4–5, 7.

Nor are X Corp.'s requests overbroad.  In particular, EY ignores the many limitations on the scope of the subpoena that X Corp. offered in the meet-and-confer process.  X Corp. agreed to narrow Requests 1, 2, and 3 to documents concerning X Corp., Twitter, and Elon Musk.  Declaration of Daniel Koffmann ¶ 23, *X Corp. v. EY*, Dkt. 1-2 ("Koffmann Decl.").  And these materials go to the heart of a key issue in X Corp.'s motion:  what communications occurred between the FTC and EY and what impact those communications had on EY.  Similarly, Requests 4 and 5—seeking documents relating to Mr. Roque's deposition and relating to X Corp.'s motion to terminate the Consent Order, in each case for the period *after* those events occurred—are limited in scope with respect to subject-matter and time period, and they logically implicate only a handful of custodians.

EY's privilege arguments are misguided too.  X Corp. does not dispute that a valid claim of privilege would be a basis for EY to withhold evidence.  But EY's construction of privilege would cloak essentially any relevant communication by an EY in-house lawyer in privilege.  That is improper.  Mr. Roque testified about a meeting between an EY in-house lawyer and representatives from the FTC, where the only EY representative was that in-house lawyer, which occurred after the meetings in which FTC representatives attempted to dictate the procedures that EY would perform and made clear that it would not be satisfied unless EY issued a report that found deficiencies in X Corp.'s privacy, data protection, and information security programs.  *United States v. Twitter*, Dkt. 18-14 (Ex. 14) at 201:3–202:1; 205:3–206:1.  That non-privileged meeting makes that attorney a fact witness from whom discovery is appropriate.  *See, e.g.*, *Oehmke*

10

v. *Medtronic, Inc.*, CIV. No. 13-2415 MJD/JSM, 2015 WL 2242041, at *7 (D. Minn. Mar. 26, 2015) (allowing deposition to question litigation counsel about "his own statements and his recollection" where attorney was "a fact witness regarding statements that were made during the meeting"), *aff'd,* CIV. No. 13-2415 MJD/JSM, 2015 WL 2242064 (D. Minn. May 12, 2015); *In re Pioneer Hi-Bred Intern., Inc.*, 238 F.3d 1370, 1376 (Fed. Cir. 2001) ("Counsel is often a fact witness with respect to various events, and may testify on deposition by the opposing party as to such matters without waiver."). Nor are that lawyer's communications with others at EY about that meeting necessarily privileged, because "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12–13 (D.D.C. 2008) (denying motion to quash third-party subpoena requesting production of attorney's "complete summaries" of meetings between FBI and former client); *S.E.C. v. Thrasher*, No. 92 CIV. 6987 (JFK), 1995 WL 456402, at *12–14 (S.D.N.Y. Aug. 2, 1995) (ordering production of SEC attorney notes that were factual "abbreviated recapitulations" of interviews between SEC staff and individuals investigated for insider trading); *Dawson v. N.Y. Life Ins. Co.*, 901 F. Supp. 1362, 1366–67 (N.D. Ill. 1995) (communications from company attorney to employees regarding factual information derived from outside sources are not privileged). Even EY's authority confirms this. *See Dir., Off. Of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("[U]nder certain circumstances purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions."); Opp. 26 (citing *Dir., Off. of Thrift Supervision*, 124 F.3d at 1308).

There can be no legitimate dispute that the discovery X Corp. seeks is relevant.

### III. EY's Burden Arguments are Disingenuous.

EY has no legitimate argument on burden where X Corp. offered to accept—in complete

11

satisfaction of EY's obligations under the subpoena—a duplicate of the documents EY produced to the FTC.  That is a push-button exercise:  EY already has collected, reviewed, screened for privilege, and prepared these documents for production.  As a result, "the cost of production and the burden of producing the records should be minimal due to the previous production."  *In re Diisocyanates Antitrust Litig.*, Misc. No. 18-1001, 2019 WL 1069660, at *1 (W.D. Pa. Jan. 15, 2019).  EY's only response is that X Corp. can obtain these documents from the FTC.  That argument is a nonstarter.  *See, e.g.*, *Pension Benefit Guar. Corp.*, 301 F.R.D. at 29 (discovery from third party not precluded simply because party has objected to overlapping discovery request). Whatever merit that argument might have where a third party has to start from scratch, it has no traction where, as here, the third party can completely satisfy its obligations by turning over a discrete set of identified documents with no incremental review and only the slightest of production costs.

In any event, the subpoena seeks documents that are not wholly in the possession of the FTC.  At a minimum, Requests 4 and 5 cover time periods that post-date when EY completed production to the FTC.  *X Corp. v. EY*, Dkt. 1-18 (Ex. 16) at 5.  And although X Corp. is not privy to the scope of documents that EY and the FTC ultimately agreed for purposes of the FTC's subpoena, it likely did not cover EY's internal communications recording its interactions with the FTC relating to X Corp. and Mr. Musk (Request 2) and other internal EY documents and communications relating to written and oral communications between EY and the FTC (Request 3).  *Id.*

EY's claim that these requests generated *terabytes* of data and would cost $5.5 to 6.5 million, Opp. 21, is an exercise in sophistry.  Of course X Corp. would agree to limit searches to relevant custodians, time periods, and search terms:  there would be no useful purpose in searching

12

the records of the more than 300,000 EY personnel who had no idea about the FTC's communications with EY regarding the X Corp. assessment. The fact that EY never sought to engage with X Corp. about such routine e-discovery measures demonstrates that EY's concern about burden is manufactured for litigation.

Where X Corp. was willing to accept the same production that EY made to the FTC, any burden associated with responding to the subpoena is of EY's own making.

### IV. EY'S REQUEST FOR ATTORNEY'S FEES IS MERITLESS.

EY's request for attorney's fees relies on three premises, each of which is baseless. Specifically, EY argues that X Corp. (1) had no legal basis to serve a subpoena; (2) "leap-frogg[ed]" the Northern District of California by moving to compel in the District of Columbia; and (3) sought documents from EY that are "equally available" from the FTC. Opp. 27–28. To the contrary, ample authority demonstrates that X Corp. is entitled to post-judgment discovery in connection with its motion to terminate the Consent Order, *see supra* 4–5, 7; the Federal Rules of Civil Procedure *required* X Corp. to file its motion in the District of Columbia instead of the Northern District of California, *see supra* 3; and the subpoena seeks a number of documents uniquely in EY's possession, *see supra* 12.

And even if EY's premises were accurate (they're not), they still would not justify an award of attorney's fees. *See, e.g.*, *Pension Benefit Guar. Corp.*, 301 F.R.D. at 28 (overlapping discovery requests not improper, let alone sanctionable). EY has not come close to demonstrating the required frivolousness, bad faith, improper motivation, or objective unreasonableness that could warrant attorney's fees. *See Fujikura Ltd. v. Finisar Corp.*, 15-MC-80110-HRL (JSC), 2015 WL 5782351, at *8 (N.D. Cal. Oct. 5, 2015); *Maximized Living, Inc. v. Google, Inc.*, No. C11-80061-MISC CRB (EDL), 2012 WL 1439034, at *2 (N.D. Cal. Mar. 30, 2012), *report and recommendation adopted,* No. C 11-80061 CRB, 2012 WL 1438988 (N.D. Cal. Apr. 25, 2012).

The lone citation EY offers, *Med. Components Inc. v. Classic Med., Inc.*, dealt with a party that failed repeatedly to comply with local rules despite court directives to do so and failed to negotiate with the third party despite a request to do so.  210 F.R.D. 175 (M.D.N.C. 2002).  None of these circumstances is present here.

    The Court should disregard EY's histrionic request for attorney's fees.

## CONCLUSION

For the foregoing reasons, X Corp. respectfully requests the Court grant the Motion and issue an order requiring EY to produce all responsive documents immediately.

DATED: September 15, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Christopher G. Michel
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Christopher G. Michel (DC Bar ID: 1034557)
Casey J. Adams (DC Bar ID: 90012729; *pro hac vice*)
Rachel G. Frank (DC Bar ID: 1659649; application to this court pending)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538 8000
Facsimile: (202) 538 8100
christophermichel@quinnemanuel.com
caseyadams@quinnemanuel.com
rachelfrank@quinnemanuel.com

Alex Spiro (*pro hac vice*)
Daniel R. Koffmann (*pro hac vice*)
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
alexspiro@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for X Corp.*

15